PJG SSA R&R (Rev  07-1-21)                                                                                                  Nelma Denise Savage

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Nelma Denise Savage, | ) | C/A No. 0:20-3504-MBS-PJG |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **ON PLAINTIFF'S APPEAL FROM THE** |
| v. | ) | **SOCIAL SECURITY** |
| | ) | **ADMINISTRATION'S DENIAL OF** |
| Andrew Saul, Commissioner of the Social Security Administration, | ) ) | **SOCIAL SECURITY BENEFITS** |
| | ) | ☐  Affirm |
| Defendant. | ) | ☒  Reverse and Remand |
| | ) | |

    This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 (D.S.C.).  The plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying the plaintiff's claims for social security benefits.

**Part I—Plaintiff seeks:**

☒    Supplemental Security Income ("SSI"):  Plaintiff's age at filing:  <u>49</u>

☒    Disability Insurance Benefits ("DIB"):  Date last insured:  <u>September 30, 2020</u>

☐    Other:

Application date:  <u>March 21, 2018</u>

Plaintiff's Year of Birth:  <u>1968</u>

Plaintiff's alleged onset date:  <u>October 1, 2017</u>

**Part II—Social Security Disability Generally**

    Under 42 U.S.C. § 423(d)(1)(A), (d)(5), and/or 42 U.S.C. § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 404.1505(a) and/or § 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973).  The regulations generally require the Administrative Law Judge ("ALJ") to consider five issues in sequence, as outlined below.  20 C.F.R. § 404.1502(a)(4) and/or § 416.920(a)(4).  If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step.  Id.

    A claimant has the initial burden of showing that he/she is unable to return to past relevant work because of his/her impairments.  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner.  To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy.  42 U.S.C. § 423(d)(2)(A) and/or § 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The Commissioner may carry this burden by obtaining testimony from a vocational expert.  Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## Part III—Administrative Proceedings

Date of ALJ Decision:  January 30, 2020

In applying the requisite five-step sequential process, the ALJ found:

Step 1:   Plaintiff was engaged in substantial gainful activity during the relevant time period:
☐ Yes  ☒ No

Step 2:   ☒ Plaintiff has the following severe impairments:

ulnar neuropathy left arm; carpal tunnel syndrome in the right hand status post release, revision of the right ulnar nerve transposition, right Guyton's canal release, degenerative joint disease of the right hip (20 CFR 404.1520(c) and 416.920(c)).

☐ Plaintiff does not have a severe impairment.

Step 3:   ☒ Plaintiff's impairment(s) does/do not meet or medically equal a Listing. 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:   Plaintiff's Residual Functional Capacity is as follows:

[T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except further limited by the following:  Frequently climbing stairs and ramps; never climbing ladders, ropes and scaffolds; frequently stooping, kneeling, crouching; occasionally crawling; frequently handling and fingering with the right dominant hand; occasionally handling and fingering with the left non-dominant hand; avoiding concentrated exposure to hazards.

☒ Plaintiff could return to his/her past relevant work as a housekeeper as actually and generally performed.

Step 5:   ☐ Plaintiff could not return to his/her past relevant work, but using the Medical-Vocational Guidelines ("Grids") as a framework supports a finding that Plaintiff is not disabled. 20 C.F.R. Pt. 404, Subpt. P, App'x 2.

☒ In the alternative, if Plaintiff could not return to his/her past relevant work, there are jobs in the national economy that Plaintiff can perform, as follows:

| Job Title | DOT # | Exertion level | Skill level | Jobs in Existence |
|---|---|---|---|---|
| Counter clerk | 249.366-010 | Light | SVP2 | 111,500 |
| Conveyer line bakery worker | 524.687-022 | Light | SVP2 | 392,000 |

Date of Appeals Council decision:  September 2, 2020

## Part IV—Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).  Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 267 (4th Cir. 2017); Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589; see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019); Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." Biestek, 139 S. Ct. at 1154 (citation omitted). In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig, 76 F.3d at 589; see also Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

**Part V—Issue for Judicial Review**

The ALJ's RFC Assessment is not supported by substantial evidence.

**Oral Argument:**

☐ **Held on** _____.

☒ **Not necessary for recommendation.**

**Summary of Reasons**

Plaintiff argues that the ALJ's residual functional capacity assessment is unsupported by substantial evidence for several reasons. However, upon careful review of the parties' arguments, the ALJ's decision, and the record in this matter, the court is constrained to recommend that this matter be remanded for further consideration of Plaintiff subjective complaints, and therefore, the court addresses this argument first. Here, it is unclear whether the ALJ's evaluation of Plaintiff's subjective complaints is supported by substantial evidence, and further, the ALJ appears to have misapplied the legal standard in evaluating them.

With regard to subjective complaints, the United States Court of Appeals for the Fourth Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996); see also Lewis v. Berryhill, 858 F.3d 858, 865-66 (4th Cir. 2017). The first step requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig, 76 F.3d at 594 (internal quotation omitted).

During the second step, the ALJ must expressly consider "the intensity and persistence of the claimant's [symptom] and the extent to which it affects her ability to work." Id. In making these determinations, the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304, at *10. ALJs are further instructed to

> limit their evaluation to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments. In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person. Rather, our adjudicators will focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities . . . .

Id. at *11.

Further, "claims of disabling [symptoms] may not be rejected '*solely* because the available objective evidence does not substantiate [the claimant's] statements' as to the severity and persistence of her [symptoms]." Craig, 76 F.3d at 595 (citations omitted); see also Arakas v. Comm'r, 983 F.3d 83, 95-96 (4th Cir. 2020) (finding that the ALJ disregarded "longstanding precedent and the agency's own policy by improperly discounting Arakas's subjective complaints of pain and fatigue, based largely on the lack of objective evidence substantiating her statements"). "This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's [symptoms] and the extent to which it impairs [her] ability to work." Craig, 76 F.3d at 595. A claimant's subjective complaints

"need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges she suffers." Id. The social security regulations inform claimants that in evaluating subjective complaints, the Commissioner will consider the following relevant factors:

(i) Your daily activities;
(ii) The location, duration, frequency, and intensity of your pain or other symptoms;
(iii) Precipitating and aggravating factors;
(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ summarized Plaintiff's hearing testimony as follows:

The claimant testified that she has worked as a housekeeper, a custodian, and a bus driver, but that she stopped working in February 2017. She believes she is disabled because she only has one good hand and she has now had two surgeries on it. She has pins and needles feeling in her right leg. She can use her left hand to assist her right hand, but is no longer receiving any treatment for that hand. She has tenderness in her right hand and elbow and her fingers cramp up when she uses them constantly. She takes Celebrex, gabapentin, and Tylenol. She underwent physical therapy in October 2018 after surgery. She has not sought further treatment from her doctor since surgery. She described having pain in her right leg, tendonitis, and regional pain complex. She received three injections in her back with no relief. Her activities of daily living consist of personal care, eating, and taking her medications, which cause sleepiness. She washes her dishes, does her laundry, makes her bed, and does some cooking. She does not sweep or mop. Her hobbies include reading and watching television. She reported she was going to have a biopsy performed after a mammogram in October 2019 revealed an abnormality. She stated she can use her hand for 15 to 20 minutes and can type for 10 to 15 minutes. She uses her smart phone regularly. She has right hip arthritis

and has an MRI scheduled for that. She has foot pain which is related to her nerve damage.

(Tr. 21.) The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (Tr. 21.) In support of this determination, the ALJ appears to offer only two reasons. The ALJ first stated that Plaintiff's "statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because post surgery the claimant only has slightly decreased strength in her right hand and continues to have full strength and range of motion in her right leg. (Exhibits 13F and 16F)." (Tr. 22.) The ALJ also found that Plaintiff's activities of daily living were inconsistent with her reports of inability to work. (Tr. 23.)

The court begins with the second reason proffered by the ALJ. The ALJ appears to have erred in discounting Plaintiff's subjective complaints as inconsistent with Plaintiff's daily activities. Although a claimant's daily activities are an appropriate factor to consider in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms, 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), "an ALJ may not consider the *type* of activities a claimant can perform without also considering the *extent* to which she can perform them." Arakas, 983 F.3d at 99 (quoting Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018)). Here, "[t]he ALJ selectively cited evidence concerning tasks which [Plaintiff] was capable of performing" without acknowledging Plaintiff's statements that qualified the extent to which she could perform her activities. Hines v. Barnhart, 453 F.3d 559, 565-66 (4th Cir. 2006). The ALJ noted Plaintiff "is able to perform light household chores, drive, and shop independently. She also likes to read." (Tr. 23.) The ALJ found these activities inconsistent with Plaintiff's alleged inability to work.

(Id.)  However, the ALJ did not mention or address the qualifying statements Plaintiff made about those activities.  For example, Plaintiff described her normal day as

> I mean I get up and wash up.  And I'll try to get up like to eat so that I can take my medication.  And the medication usually makes me go to sleep.  And I'll try to do a little, if there is dishes or something to do up, I'll try to wash all the dishes even if I have to sit and do it.  If I don't have a doctor's appointment or something, I basically stays in the house.  I don't go out unless I have to go somewhere.

(Tr. 42.)  Plaintiff stated that she did no activities while at home, but if she is feeling okay, she "might do a little cooking" or "try to do a little dishes" and make her bed.  Plaintiff explained that she is "not doing anything because I'm always medicated" and as to laundry, she can put clothes in the washing machine, but a friend comes to hang them to dry for her.  (Id.)  Thus, it is unclear how these activities of daily living are inconsistent with the Plaintiff's allegations that she is unable to work.[1]  See Arakas, 983 F.3d at 100 (finding where the ALJ selectively cited evidence concerning tasks which the plaintiff was capable of performing and improperly disregarded the plaintiff's qualifying statements that the ALJ "failed to build an accurate and logical bridge from the evidence to his conclusion") (quoting Hines, 453 F.3d at 565; Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016)) (internal quotation marks omitted).

The other reason offered by the ALJ in discounting Plaintiff's subjective complaints of disabling pain was that Plaintiff's statements were "inconsistent because post surgery the claimant

---

[1] Additionally, it is unclear how these limited activities of daily living supported the ALJ's conclusion that Plaintiff could sustain a reduced range of light work for an eight-hour workday.  See Arakas, 983 F.3d at 100 (finding the ALJ erred in failing to provide any "explanation as to how those particular activities . . . showed that [the claimant] could persist through an eight-hour workday" and "[i]nstead, the ALJ merely stated in a conclusory manner that Arakas's activities were 'fully consistent' with his Residual Functional Capacity assessment") (internal citations and quotations omitted, first alteration in original); see also SSR 96-8p ("Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis.  A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.") (emphasis omitted).

only has slightly decreased strength in her right hand and continues to have full strength and range of motion in her right leg. (Exhibits 13F and 16F)." (Tr. 22.) The ALJ then proceeds to detail fairly significant medical treatment, repeated reports of complaints and limitations, and imaging records that would arguably support Plaintiff's allegations. This summary by the ALJ included the following:

> The claimant was diagnosed with lateral epicondylitis after presenting her primary care provider with right thigh and arm pain with numbness in February 2018. Her primary care provider administered an injection. (Exhibit 2F) Radiographic imaging showed no acute abnormality. (Exhibit 1F) The claimant continued to seek treatment for right knee and elbow pain throughout the Spring of 2018, and her primary care provider ordered a nerve conduction study in July 2018, noting that her nerves were "vulnerable to rapid deterioration based on the history of her left" hand. (Exhibit 3F) Marked atrophy in the left hand was noted and the claimant had positive Tinel's bilaterally at wrists and right medial elbow, but no abnormal activity was noted in the muscles tested during an EMG on the right and the nerve conduction study on the right ulnar sensory nerve was within normal limits. (Exhibit 4F) The claimant's primary care provider prescribed Gabapentin for pain from ulnar neuropathy of the right elbow in August 2019 and the claimant underwent surgical revision of the right ulnar nerve transposition, right Guyon's canal release and right carpal tunnel release. (Exhibits 6F and 7F)
>
> The claimant continued to report right knee pain, but imaging of the right knee performed in October 2018 showed only mild joint space narrowing. (Exhibit 9F) The claimant had full extension and full strength in her right knee, despite tenderness on exam, in January 2019. (Exhibit 9F) A[n] MRI of the right knee showed mild chondromalacia/cartilage ulceration in January 2019. (Exhibit 11F) The claimant reported improvement in her right knee in February 2019 and stated that her knee brace was helping. (Exhibit 13F) The claimant continued to report pain, numbness, and tingling to her right hand 6 months after surgery and on exam she had continued atrophy, slightly decreased strength, positive Forment's sign, and diminished sensation to light touch in the median innervated digits. Her orthopedic surgeon, Kimberly Young, MD, diagnosed her with entrapment of ulnar nerves and CTS bilaterally and stated that she was "severely disabled on both hands following complete ulnar nerve dysfunction." (Exhibit 13F)
>
> The claimant reported increased knee pain in March 2019 and stated she had fallen twice since the previous summer. Her treating physician, Brett Young, MD, noted significant tenderness was noted over the saphenous nerve at the quadriceps and tenderness to palpation in the medial patellofemoral gutter, but she retained full extension and strength of the knee. Dr. Young assessed her with neuritis of the right saphenous nerve and in April administered a right ultrasound guided

> continuous nerve block of the Saphenous nerve. (Exhibits 13F and 16F) The claimant continued to report right leg pain from thigh down to the foot with sensation of pins and needles and burning. She had some improvement of pain around the knee with the saphenous nerve block. Her treating physician noted in July 2019 that she had sensitivity to light touch through the medial thigh and medial calf and assessed her with neuritis of right saphenous nerve. Her treating physician suggested she may have a variation of complex regional pain syndrome. (Exhibit 15F) Imaging of the lumbar spine was unremarkable. In August 2019, she reported right hip pain for one week. Exam revealed mild tenderness over lateral aspect of right hip and imaging showed degenerative changes without acute osseous abnormality of the right hip. Hip strain was suspected. She was prescribed Celebrex and was to follow up with orthopedics. She received a thoracic sympathetic block in September 2019. (Exhibit 16F)

(Tr. 22.)

Based on the foregoing, the court is unable to determine whether the ALJ's finding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" is supported by substantial evidence as the ALJ's decision lacks sufficient analysis of the evidence. Although the ALJ summarizes Plaintiff's medical treatment, reports, and findings, many of these appear to in fact support Plaintiff's allegations, and the ALJ has failed to explain why she determined that the records as a whole were inconsistent with Plaintiff's disabling allegations of pain. See Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding.") (quoting Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010)). Moreover, it is unclear whether the ALJ considered all the applicable factors in evaluating Plaintiff's subjective complaints, several of which appear to weigh in Plaintiff's favor. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Accordingly, remand is warranted for further consideration and explanation of the ALJ's consideration of Plaintiff's subjective complaints and ultimately how she arrived at Plaintiff's residual functional capacity. See Arakas,

0:20-cv-03504-MBS     Date Filed 10/15/21     Entry Number 17     Page 10 of 11

PJG SSA R&R (Rev  07-1-21)                                                                                         Nelma Denise Savage
_____

983 F.3d at 95 (stating that "ALJs must 'build an accurate and logical bridge' from the evidence to their conclusions") (quoting <u>Monroe</u>, 826 F.3d at 189).

## RECOMMENDATION

**It is recommended that this matter be**

☐ **Affirmed.  Plaintiff has failed to show that the Commissioner's decision was unsupported by substantial evidence or controlled by an error of law.**

☒ **Reversed and remanded pursuant to ☒ Sentence Four ☐ Sentence Six of 42 U.S.C. § 405(g) for further consideration consistent with this Order.**

☐ **Reversed and remanded for an award of benefits.**

_____
October 15, 2021                                     Paige J. Gossett
Columbia, South Carolina                  UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).